IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0916-08






JESSE WILLIAMS, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY




 

 Johnson, J., filed a statement concurring in the refusal to grant review of
appellant's petition, in which Price and Cochran, JJ., joined.


STATEMENT CONCURRING IN REFUSAL

TO REVIEW APPELLANT'S PETITION


 On May 14, 2002, the two-year-old son of a friend of appellant began having respiratory
distress while he was in appellant's custody, and appellant's mother called 911. When the first-responders asked what had happened, appellant said, "This is probably going to be my fault."

 The following day, May 15, appellant was taken to the police department in handcuffs. A
reasonable person in such circumstances could reasonable conclude that he was under arrest or, at
the very least, in custody. (1) Appellant became agitated when he was left alone in the interrogation
room. At some point, Detective Merrill entered and advised appellant of his rights. Tex. Code
Crim. Proc. art. 38.22(2)(a). In response, appellant said, "I want to terminate everything right now."

 There is nothing about that statement that is ambiguous. (2) Appellant had just been advised
of his Miranda rights and acknowledged that he understood them. He then chose to exercise his
right to end the interview. Tex. Code Crim. Proc. art. 38.22(2)(a)(5). Under the standard of
"scrupulously honoring" the invocation of that right, interrogation should have ceased immediately. 
It did not.

 Instead, Detective Merrill attempted to confirm the invocation and reminded appellant that
he did not have to talk to Merrill. Appellant replied that the only reason that he went to the police
station "was to comply . . . with the other detective," indicating that his presence at the police station
was not entirely voluntary. The interrogation still did not end. Detective Merrill again asked if
appellant wanted to terminate the interrogation. At that point, appellant agreed to answer questions.

 The continued interrogation after an unambiguous invocation of the right to terminate it
violated appellant's right to remain silent. Because the admission of the video tape of the improper
interrogation is of constitutional dimension, the issue becomes whether the reviewing court can
determine "beyond a reasonable doubt that the error did not contribute to the conviction or
punishment." Tex. R. App. Proc. 44.2(a).

 The improperly obtained statement from May 15 contained general information about
appellant's relationship to the injured child and appellant's denials of any act that injured the child
and of ingestion of drugs or alcohol. After that interrogation, the police released appellant and drove
him to the hospital where the child was being treated. Police arrested appellant two days later for
injury to the child, Detective Merrill again advised appellant of his Miranda rights, and appellant
again acknowledged that he understood those rights. It was only in this interrogation on May 17 that
appellant began to concede that he might have injured the child, although inadvertently, by shaking
him twice and with enough force to cause the child's head to snap back repeatedly. On May 18,
appellant called Detective Merrill from the jail and told him that he had ingested marijuana and
"more than three" beers and that "someone had told" him that he had also "consumed some PCP."

 Appellant testified at his trial, and his testimony in large part reiterated his statements from
the interrogation on May 15. There is no harm from improperly admitted evidence if the same
evidence was admitted through another source without objection. See, e.g., Massey v. State, 933
S.W.2d 141 (Tex. Crim. App. 1996).

 Nor can I conclude that the May 17 interrogation was tainted because of the violation of
appellant's rights on May 15. During the May 15 interrogation, the detectives learned only general
information about appellant's care of the child and extracted nothing that could be construed as a
confession. Appellant was released without condition that same day. There is no evidence of other
police contact with him before his arrest on May 17, when Detective Merrill once again advised him
of his Miranda rights and appellant again acknowledged that he understood those rights. While the
previous interrogation was mentioned, the questions posed in this interrogation were more specific,
and the questioners more confrontive, because of additional information discovered in the
intervening two days, and it was only during that interrogation that appellant began to concede that
perhaps his discipline of the toddler had caused injury.

 Considered together, appellant's statement to the first-responders on May 14, his answers to
the questions on May 17, his telephone call to Detective Merrill on May 18, and his testimony at trial
that replicated the content of the May 15 interrogation and included an admission of shaking the
child until he lost consciousness and started gasping for air, lead me to conclude that, beyond a
reasonable doubt, the erroneous admission of the video tape of the interrogation of May 15 did not
contribute to appellant's conviction or punishment. I therefore concur in the Court's refusal of
appellant's Petition for Discretionary Review.


Filed: December 17, 2008

Publish
1. Removing the handcuffs while a suspect is in an interrogation room does not, as the state suggested to the
court of appeals, refute a claim that the suspect was "in custody"; handcuffs are also removed when a suspect is
locked in a jail cell.
2. The court of appeals described the statement in Ramos v. State, 245 S.W.3d 410 (Tex. Crim. App. 2008),
as "clearer and less ambiguous" than the statement in this case and emphasized this Court's use of the phrase "in
context." That phrase referred to Ramos's statement that he did not want to talk about "it" and the ambiguity that
could arise from that pronoun. However, Ramos was decided on the basis of Ramos's statement that preceded the
"it" statement: I don't want to talk to you. Because the first statement was an unambiguous assertion of the right to
remain silent, any ambiguity in the second statement "was, in context, entirely irrelevant." Id. at 418-19.