



## MEMORANDUM OPINION

No. 04-08-00730-CR

Eddie **ESQUIVEL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2007CR7706
Honorable Sid L. Harle, Judge Presiding

Opinion by:      Catherine Stone, Chief Justice

Sitting:          Catherine Stone, Chief Justice
                 Phylis J. Speedlin, Justice
                 Steven C. Hilbig, Justice

Delivered and Filed:  October 7, 2009

AFFIRMED

Eddie Esquivel was sentenced in accordance with a plea bargain agreement but appeals the

trial court's ruling on a pre-trial motion to suppress.[1]  Esquivel contends that his confession was

---

[1] The plea bargain agreement form signed by Esquivel contained a pre-printed waiver of appeal.  However, at the conclusion of the hearing at which the trial court sentenced Esquivel in accordance with the plea bargain agreement, the trial court stated, "He has 30 days in which to file [a] motion for new trial and notice of appeal based upon that motion."  From the record, the trial court clearly was referring to Esquivel's motion to suppress.  In addition, the trial court's certification of defendant's right of appeal, which Esquivel also signed, stated that Esquivel had the right to appeal the ruling on the motion to suppress.  Given the conflicts in the record, we conclude that the waiver in the plea bargain agreement was not a voluntary, knowing, and intelligent waiver of Esquivel's right to appeal.  *See Ex parte*

involuntarily obtained in violation of the United States and Texas Constitutions. We affirm the trial court's judgment.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). In this review we give almost total deference to the trial court's determination of historical facts and review the court's application of the law *de novo*. *Id*.

"The right to terminate questioning is among the procedural safeguards that *Miranda* establishes." *Williams v. State*, 257 S.W.3d 426, 432 (Tex. App.—Austin 2008), *pet. ref'd*, 272 S.W.3d 614 (Tex. Crim. App. 2008); *see also Miranda v. Arizona*, 384 U.S. 436, 474 (1966). As the United States Supreme Court has stated, "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473-74; *see also Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008). The Court explained, "Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." *Miranda*, 384 U.S. at 474. "[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley*, 423 U.S. 96, 104 (1975); *see also Ramos*, 245 S.W.3d at 418.

---

*Delaney*, 207 S.W.3d 794, 799 (Tex. Crim. App. 2006) (requiring pre-trial waiver to be voluntary, knowing, and intelligent). Although the State also refers to the notation "* NO APPLS *" on the trial court's docket sheet, the trial court's written certification controls over the docket sheet entry. *See Garza v. Tex. Alcoholic Bev. Comm'n*, 89 S.W.3d 1, 7 (Tex. 2002); *Kalyanaram v. Burck*, 225 S.W.3d 291, 303 (Tex. App.—El Paso 2006, no pet.).

The suspect is not required to use any particular phraseology to invoke the right to remain silent. *Ramos*, 245 S.W.3d at 418. Any declaration of a desire to terminate the questioning should suffice. *Id*. An interrogating officer is not required to stop his questioning, however, unless the suspect's invocation of rights is unambiguous. *Id*. "Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants" to terminate the questioning. *Davis v. U.S.*, 512 U.S. 452, 461 (1994). The officer is not, however, required to ask clarifying questions, and '[i]f the suspect's statement is not an unambiguous or unequivocal request [to terminate the interview or to invoke the right to silence], the officers have no obligation to stop questioning him." *Davis*, 512 U.S. at 461-62; *see also Ramos*, 245 S.W.3d at 418. In determining whether the right to remain silent was unambiguously invoked, courts look to the totality of the circumstances. *Williams*, 257 S.W.3d at 433.

> Esquivel's complaint arises from the following exchange that occurred during his interview:
>
> Detective Cardenas: I'm not gonna promise you anything for you talking with me today, or for you telling me how things happened. You know, but I think that the judge and the jury are gonna want to know how things actually happened. Okay, because what we have Eddie is our evidence, okay? All right? Okay, but you don't know what – what she's telling us, what [the victim] is telling us how this happened. For all you know she could be describing you as a monster. You're not a monster.
>
> Esquivel: Of course I'm not.
>
> Detective Cardenas: It was a mistake. There is a big difference there. Okay, now we need to know exactly how it happened because we have her story. Like I said she could be describing you as this most horrible person in – that has ever lived on this Earth. You know, that you would torture her, that you would tie her up, that you would cut her, threaten to kill her. I don't think that's you. Okay? You know, I've been looking into this case and I've been looking into you as well. You're not that type of person, okay, but all of us can be that type of person that makes mistakes and that's a big difference than being a monster. So, I'm trying to let you know that for

your benefit you need to tell us how this actually happened. Did you ever force her to do something? Did you ever put a gun to her head?

Esquivel: I never done nothing. I'm done talking. I – I want to talk to [the victim's mother] and see what the hell is going on. I don't know why. I just – I need to talk to, to.

Detective Cardenas: Okay, did you say that you don't want to talk to me anymore?

Esquivel: No, cause I mean, what for? There ain't no use, right?

Detective Cardenas: I don't know. I think that there is a lot of use and I explained it to you but if – if you don't want to talk with me, well, then I will be leaving.

Esquivel: Man [inaudible] either way. I'm going to be doing time. I'm already doing time. And, I don't want to even walk around with people saying that I'm a child molester and shit like that cause I'm not.

Detective Cardenas: Uh, the only one that knows about this case is me and, of course, [the victim's mother]. Okay, but as far as any – uh – police officers, you know authorities, uh, you know the Bexar County Jail doesn't know about this. So, as far as police are concerned, I'm the only one that knows about this case. Okay, and I'm trying to talk to you right now and get your side of the story. I know that something happened, but I'm just trying to figure out how it happened. I got [the victim's] story, you know, you don't know what she's saying about you. You know that – you know for sure that she's saying that you touched her. Okay, but you don't know the way that she described it. She could be describing it —

Esquivel: And what did she say?

Detective Cardenas: – in a horrible manner. All right, you know, I'm not gonna tell you that right now. That's what you want me to say. You know, for me to spill my beans, but I'm not gonna do that Eddie.

Esquivel: No, I understand that. I understand that. You're doing your job. I understand that.

Detective Cardenas: Well look, well listen, you say that you don't want to talk to me cause you told me that already so that means –

Esquivel: No, that's, no.

Detective Cardenas: – that, you know, that I'm gonna have to leave, but is – is that

what you want? You don't want to talk to me, right?

Esquivel: No. I'll go ahead and talk to you. What other chance do I got, right?

Detective Cardenas: Well, I'm gonna leave right now if you don't want to talk to me. I will leave. You know, I'm – I'm not going to beat you over the head with it. I'm not going to force you to talk to me. I will go out this door right now and leave if you want this to stop right now.

Esquivel: Well, what is going to happen after that?

Detective Cardenas then began explaining the process of sending the case to the district attorney and grand jury, and the interview continued for approximately forty additional minutes.

During cross-examination, Detective Cardenas testified regarding his response to Esquivel's statement that he was done talking as follows:

Q.     Well, isn't it true that he several times told you that he wanted to stop talking?

A.     He did say that he wanted to stop talking, but he kept on talking, and I tried to – I told him I would leave, but he did not want to – or he wanted to continue to talk.

****

Q.     Okay. And, in fact, you questioned him and questioned him even after several times he wanted to stop; isn't that correct? He wanted to stop the conversation.

A.     I want to say several times he did bring it up and I told him that if [he] wanted to stop talking to me I would leave, but he continued to talk with me and he wanted to talk with me and he posed questions for me. So, based on that, you know, I thought that he wanted me to stay.

[Relevant portion of tape-recording played]

Q.     BY [DEFENSE COUNSEL]) Well, Detective, you've heard – you've heard now the conversation, and he told you at least – you asked him at least four times if he wanted you to stop, and he told you, he indicated to you that he did want you to stop. Why you [sic] did not leave at that time?

A.     No, that's not true.  He raised the issue once.  I then tried to make sure four times he did not object, and then he actually said that he didn't [sic] want to talk to me.

Q.     Well, did you leave at that time?

A.     No, because he wanted to talk with me.  If he did not want to talk with me, then, during the playing of this audio, I was up on my feet and I was getting ready to go.  But he did want to talk to me and so I remained there.

The question presented is whether Esquivel's statement that he was "done talking" was an unambiguous invocation of his right to remain silent.  The trial court found, "Roughly midway through the interview, Defendant said he no longer wanted to talk.  Det. Cardenas prepared to leave and Defendant reversed himself – he said he did want to keep talking."  The trial court also found that Detective Cardenas scrupulously honored Esquivel's right to terminate the interview and warned Esquivel several times that he did not have to talk to him and that Detective Cardenas would leave if Esquivel wanted him to leave.  The trial court further found that Detective Cardenas continued the interview only after Esquivel said he wanted to continue. The trial court concluded, "After Defendant expressed an interest in terminating the interview, Det. Cardenas scrupulously honored Defendant's request; however, Defendant intentionally, knowingly, and voluntarily reinitiated the interview on his own accord before the interview continued."

In the context presented, we hold that Esquivel's statement was not an unambiguous invocation of his right to remain silent.  Immediately after Esquivel said he was done talking, Esquivel continued talking, which made his statement ambiguous.  Detective Cardenas did not ignore the statement, but instead sought to clarify Esquivel's wishes before continuing the interview.  *See Williams*, 257 S.W.3d at 433-43 (officer could clarify appellant's wishes when he stated that he

wanted to "terminate everything"); *see also Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996) (holding defendant's statements that, "I can't say more than that. I need to rest." were not an unambiguous invocation of the right to remain silent); *Franks v. State*, 90 S.W.3d 771, 786-87 (Tex. App.—Fort Worth 2002, no pet.) (holding defendant's statements that, "I don't want to talk anymore. I'm tired." not to be an unambiguous invocation of rights). By continuing to talk after he stated he was done talking, Esquivel made his statement ambiguous, unlike a similar statement made by the defendant in *Ramos* where the evidence did not show that the defendant continued to talk after he stated that he did not want to talk to the officer and did not want to talk about it anymore. 245 S.W.3d at 413, 418-19. Because we conclude Esquivel's statement was ambiguous, Detective Cardenas did not violate Esquivel's right to remain silent by continuing the interview.

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH